STERNO, INC. (formerly S. Sternau & Co., Inc.), Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 143, Docket 26274.

United States Court of Appeals Second Circuit.

Argued Jan. 13, 1961.

Decided Feb. 8, 1961.

Theodore Tannenwald, Jr., of Weil, Gotshal & Manges, New York City (Benjamin Clark, New York City, on the brief), for petitioner-appellant.

Harold M. Seidel, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before CLARK, MAGRUDER, and MOORE, Circuit Judges.

PER CURIAM.

Taxpayer Sterno, Inc. petitions for review of a Tax Court decision finding a deficiency in income and excess profits tax for the taxable year 1951 in the amount of $12,570.66. In its 1951 return, taxpayer included among its ordinary and necessary business expenses, deducted pursuant to § 23(a) (1) (A), Int.Rev.Code of 1939, commissions paid to Sterno Sales Corporation in the amount of $120,515.95. The Commissioner determined that this amount was unreasonable and excessive compensation to the extent that it exceeded $100,107.-46, the amount of expenses incurred by Sales during 1951. Accordingly he disallowed deduction of the remaining $20,-408.49, representing Sales's reported net income for that year. The Tax Court, on consideration of all the evidence, found that taxpayer had failed to sustain its burden of proving that Sales's services were worth more than the amount of expenses it incurred. We are content to accept Judge Turner's findings and conclusions.

The taxpayer and Sales are wholly owned subsidiaries of still another entity, namely, Sterno Corporation. Since its organization in 1916, taxpayer has been engaged in the marketing and distribution of "Sterno" canned heat and related products. According to taxpayer's president, Sales, which has only a nominal capital of $250, was organized in 1926 to reduce state tax liabilities, to limit tort liability for salesmen traveling in automobiles, and to departmentalize the sales function. But the taxpayer was admittedly the "operating company" in the Sterno enterprise. Sales's function

was limited to acting as the employer of six to eight salesmen, paying their salaries and wages and reimbursing them for traveling expenses. These salesmen took orders for Sterno products on stationery bearing the name of Sales, and then mailed these orders directly to the taxpayer. This work of the salesmen was the only operation conducted by Sales. The taxpayer carried on all other activity relating to sales. Thus the orders taken by Sales's employees were subject to acceptance by taxpayer, which checked the credit of the prospective purchasers and prepared the shipping and billing orders. Sales had no office separate and apart from that of the taxpayer, employed no clerks, and kept no separate books, the records of its operations being maintained by the taxpayer's employees on the latter's premises. So the taxpayer conducted all advertising and maintained the only display room and warehouse. It and Sales had the same officers for 1951, but the only salaries received by them were paid by it. The proof tends to show that the salesmen took orders from its supervisory personnel, rather than from anybody purporting to act on behalf of Sales.

The functions of Sales were considerably more circumscribed than those of an independent sales agent, and the amount of compensation paid by taxpayer to two such agents does not furnish a guide as to the reasonable value of Sales's services. Much more reliable evidence of such value is the fact that from 1936 through 1950, taxpayer simply reimbursed Sales for its expenses. In 1951, taxpayer agreed to pay Sales a 1½% commission on its sales of Sterno products for the year in addition to reimbursement for operating expenses. But there is no evidence that this added payment was designed to give fair compensation for any added services to be performed by Sales. Taxpayer's president testified that he instituted the change because "it doesn't make any sense for any corporate entity not making a profit" and because a strengthened Sales company could be a means of carrying out "certain ideas." This testimony, taken at its face, still fails to establish that Sales rendered services justifying the additional compensation in excess of expenses. So the evidence fully sustains the conclusion that the services rendered by Sales were worth no more than the amount expended by Sales for salesmen's salaries and expenses, taxes, bad debts, and legal and general expenses.

Decision affirmed.